

FILED

1  Anoush Hakimi (SBN 228858)
2  anoush@handslawgroup.com
   Peter Shahriari (SBN 237074)
3  peter@handslawgroup.com
4  **THE LAW OFFICE OF HAKIMI & SHAHRIARI**
   1800 Vine Street
5  Los Angeles, CA 90028
6  Telephone: (888) 635-2250
   Facsimile: (213) 402-2170
7
8  Attorneys for Plaintiff-Relator,
   **RELATOR, LLC**
9

2022 JUN -3 PM 1:24

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: EEE

PAID

JUN - 3 2022
EEE
Clerk, US District Court
COURT 485-2

10          **UNITED STATES DISTRICT COURT**
11          **CENTRAL DISTRICT OF CALIFORNIA**
12

13  **UNITED STATES OF AMERICA,**          Case No.

14          Plaintiff,                     **LACV22-3816-MCS(MARx)**

15  *ex rel.* **RELATOR LLC**, a California   **COMPLAINT FOR VIOLATIONS
    limited liability company,            OF FEDERAL FALSE CLAIMS
16                                         ACT**

17          Relator,                      **FILED *IN CAMERA* UNDER SEAL
                                          PURSUANT TO 31 U.S.C. §
18       v.                               3730(b)(2)**

19  **WEST COAST DENTAL SERVICES,
    INC.**, a California corporation, **COHEN   **DO NOT PLACE ON PACER**
20  SEDGH MANAVI & PAKRAVAN
    DENTAL CORPORATION**, a
21  California corporation, **SOL COHEN      **JURY TRIAL DEMANDED**
    SEDGH DDS INC.**, a California
22  corporation, **SOLEYMAN COHEN
    SEDGH DDS INC.**, a California
23  corporation, **SOL COHEN SEDGH
    DENTAL CORPORATION**, a
24  California corporation, **PAKRAVAN
25  DENTAL CORPORATION**, a
    California corporation, **FARID
26  PAKRAVAN PROFESSIONAL**
27
28

_____
                          COMPLAINT

1  **DENTAL CORPORATION**, a
2  California corporation, **CITY REAL
ESTATE HOLDING, LLC**, a
3  California limited liability company,
4  **SOLEYMAN COHEN-SEDGH**, an
individual, **FARID PAKRAVAN**, an
5  individual, and **FARHAD MANAVI**, an
individual; and
6  DOES 1-10,
7
8        Defendants.
9
10

11       Plaintiff-Relator, **RELATOR LLC** (hereinafter referred to as "Plaintiff")

12  complains of Defendants **WEST COAST DENTAL SERVICES, INC.**, a

13
14  California corporation, **COHEN SEDGH MANAVI & PAKRAVAN DENTAL**

15  **CORPORATION**, a California corporation, **SOL COHEN SEDGH DDS INC.**, a

16
17  California corporation, **SOLEYMAN COHEN SEDGH DDS INC.**, a California

18  corporation, **SOL COHEN SEDGH DENTAL CORPORATION**, a California

19  corporation, **PAKRAVAN DENTAL CORPORATION**, a California corporation,

20
21  **FARID PAKRAVAN PROFESSIONAL DENTAL CORPORATION**, a

22  California corporation, **CITY REAL ESTATE HOLDING, LLC**, a California

23  limited liability company, **SOLEYMAN COHEN-SEDGH**, an individual, **FARID**

24
25  **PAKRAVAN**, an individual, and **FARHAD MANAVI**, an individual; and Does 1-

26  10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as

27  follows:

28

2

COMPLAINT

## I.    INTRODUCTION

1.    This is a case about a handful of wealthy businessmen exploiting and defrauding The United States Government by embezzling millions of dollars from an aid program intended to help working families. These wealthy businessmen defrauded the government for their own personal, unjust and unlawful enrichment, at a time of national emergency.

2.    Plaintiff-Relator, Relator LLC on behalf of the United States of America brings this action to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake.

3.    This action arises from false and deceptive statements and claims that the Corporate Defendants (as defined below) and their owners, officers and shareholders, the Individual Defendants (as defined below), listed in the caption (collectively "Defendants"), knowingly presented to, or caused to be presented to, the United States and the United States Small Business Administration ("SBA") and lenders acting on the SBA's behalf, in violation of the FCA and common law.

4.    The Individual Defendants, among other things, used the Corporate Defendants to unlawfully obtain millions of dollars of PPP Proceeds (as defined

COMPLAINT

below), and unlawfully misappropriated such proceeds for their own personal gain.

5.     In their applications, the Corporate Defendants stated that they would use 100% of the PPP Proceeds for payroll. They did not use the received PPP Proceeds for payroll, quite the opposite. The Defendants laid off or shuffled most of their employees among affiliated entities and instead used the PPP Proceeds for personal gain, such as all cash real estate purchases.

6.     The Defendants made many material false statements in their PPP applications, including the use of proceeds, number of employees, and retention of employees.

7.     The scheme is summarized in this way: Defendants received a large first-round PPP loan for all of their 477 employees through one entity (Corp 1, as defined below), then shortly thereafter moved most of these employees off the company payroll onto other affiliated companies' payrolls which are inactive shell corporations owned and controlled by the Individual Defendants. The shell corporations (Corp 2 – Corp 7, defined below) then also collected first-round PPP loans for these same employees, allowing for duplicate loans while also reducing the number of employees (less than 300) in the original company (Corp 1) and thereby allowing it to qualify for a second-round PPP loan. Defendants did not use the loans (all of which were forgiven by the SBA) for payroll as required, but rather embezzled the money for personal gain like real estate purchases.

8.     In executing on this scheme, the first-round loan obtained by Corp 1 in 2020 was with one bank (Idaho First Bank) and Corp 1's second-round loan as well as all of the other loans of the other Corporate Defendants (Corp 2 through Corp 7)

4

1  which were all obtained in 2021 were with a different lender (A10capital, LLC).

2
3  9.      Prior to the start of the pandemic the Individual Defendants, through

4  Corp 1, owned and operated a number of dental offices in California.

5  10.     The PPP funds were not used for eligible purposes. During the course

6
7  of the pandemic, the Individual Defendants individually and through various

8  corporate entities owned and controlled by the Individual Defendants, used these

9  ill-gotten PPP proceeds to purchase lavish multi-million-dollar second and third

10
11 homes and numerous single-family residences for speculative real estate investment

12 in all-cash offers.

13 11.     Rather than protect the paychecks of their employees, the Defendants

14
15 terminated (or shuffled around) most of their workers (about 75% of them) and

16 instead used government money for their own gain, to speculate on real estate

17 during a national and global health crisis.

18
19 **II.    THE PARTIES**

20 12.     Plaintiff Relator LLC, is a California limited liability company with its

21 principal place of business in Los Angeles, California.

22 13.     Defendant West Coast Dental Services, Inc., is a California

23
24 corporation ("Corp 1") with its principal place of business at 12121 Wilshire Blvd.,

25 Suite 1111, Los Angeles, California 90025.

26 14.     During round 1 of the paycheck protection program, Corp 1 applied

27
28 for a PPP loan for **$7,343,628.00**. They were approved on **April 27, 2020** by the

SBA for an amount of $7,343,628.00. The loan was facilitated by Idaho First Bank. Corp 1 received 100% of the approved amount. The SBA forgave $7,428,331.00 of this loan on June 25, 2021. On its application for this loan, Corp 1 stated that they had 477 employees with an average salary of $73,898.00 per year. This loan hereafter referred to as the "Corp 1 Round 1 Loan."

15.     During round 2 of the paycheck protection program, Corp 1 requested a PPP loan for **$1,043,518.00**. They were approved on **February 14, 2021** by the SBA for an amount of $1,043,518.00. The loan was facilitated by A10capital, LLC. Corp 1 received 100% of the approved amount. The SBA forgave $1,055,182.53 of this loan on March 31, 2022. On its application for this second-round loan, Corp 1 stated that they only had 131 employees with an average salary of $38,236.00 per year. This loan hereafter referred to as the "Corp 1 Round 2 Loan." *In other words, between the time of their first-round loan and their second-round loan they had terminated (or shuffled around) 346, or roughly 73.4% of their employees.*

16.     Defendant Cohen Sedgh Manavi & Pakravan Dental Corporation, is a California corporation ("Corp 2") with its principal place of business at 12121 Wilshire Blvd., Suite 1111, Los Angeles, California 90025.

17.     During round 1 of the paycheck protection program, Corp 2 requested a PPP loan for **$1,995,000.00**. They were approved on **February 24, 2021** by the SBA for an amount of $1,995,000.00. The loan was facilitated by A10capital, LLC.

Corp 2 received 100% of the approved amount. The SBA forgave $2,014,130.14 of this loan on February 14, 2022. On its application for this loan, Corp 2 stated that they had 218 employees with an average salary of $43,927.00 per year. This loan hereafter referred to as the "Corp 2 Loan." Plaintiff alleges that Corp 2's 218 employees were actually Corp 1 employees that were fraudulently listed on Corp 2's books so that Corp 1 could show less than 300 employees for its second-round PPP application and so that the Defendants could receive additional first-round proceeds for these same Corp 1 employees through Corp 2.

18.    Defendant Sol Cohen Sedgh Dds Inc., is a California corporation ("Corp 3") with its principal place of business at 12121 Wilshire Blvd., Suite 1111, Los Angeles, California 90025.

19.    During round 1 of the paycheck protection program, Corp 3 requested a PPP loan for **$267,612.00.** They were approved on **March 27, 2021** by the SBA for an amount of $267,612.00. The loan was facilitated by A10capital, LLC. Corp 3 received 100% of the approved amount. The SBA forgave $270,068.16 of this loan on March 3, 2022. On its application for this loan, Corp 3 stated that they had 23 employees with an average salary of $55,849.00 per year. This loan hereafter referred to as the "Corp 3 Loan." Plaintiff alleges that Corp 3's 23 employees were actually Corp 1 employees that were fraudulently listed on Corp 2's books so that Corp 1 could show less than 300 employees for its second-round PPP application

7

and so that the Defendants could receive additional first-round proceeds for these same Corp 1 employees through Corp 3.

20.    Defendant Soleyman Cohen Sedgh Dds Inc., is a California corporation ("Corp 4") with its principal place of business at 12121 Wilshire Blvd., Suite 1111, Los Angeles, California 90025.

21.    During round 1 of the paycheck protection program, Corp 4 requested a PPP loan for **$148,481.00**. They were approved on **March 25, 2021** by the SBA for an amount of $148,481.00. The loan was facilitated by A10capital, LLC. Corp 4 received 100% of the approved amount. The SBA forgave $149,676.98 of this loan on January 21, 2022.  On its application for this loan, Corp 4 stated that they had 18 employees with an average salary of $39,595.00 per year. This loan hereafter referred to as the "Corp 4 Loan." Plaintiff alleges that Corp 4's 18 employees were actually Corp 1 employees that were fraudulently listed on Corp 4's books so that Corp 1 could show less than 300 employees for its second-round PPP application and so that the Defendants could receive additional first-round proceeds for these same Corp 1 employees through Corp 4.

22.    Defendant Sol Cohen Sedgh Dental Corporation, is a California corporation ("Corp 5") with its principal place of business at 12121 Wilshire Blvd., Suite 1111, Los Angeles, California 90025.

23.    During round 1 of the paycheck protection program, Corp 5 requested

8

COMPLAINT

a PPP loan for **$173,235.00**. They were approved on **March 30, 2021** by the SBA for an amount of $173,235.00. The loan was facilitated by A10capital, LLC. Corp 5 received 100% of the approved amount. The SBA forgave $174,758.52 of this loan on February 17, 2022. On its application for this loan, Corp 5 stated that they had 15 employees with an average salary of $55,435.00 per year. This loan hereafter referred to as the "Corp 5 Loan." Plaintiff alleges that Corp 5's 15 employees were actually Corp 1 employees that were fraudulently listed on Corp 5's books so that Corp 1 could show less than 300 employees for its second-round PPP application and so that the Defendants could receive additional first-round proceeds for these same Corp 1 employees through Corp 5.

24.    Defendant Pakravan Dental Corporation, is a California corporation ("Corp 6") with its principal place of business at 12121 Wilshire Blvd., Suite 1111, Los Angeles, California 90025.

25.    During round 1 of the paycheck protection program, Corp 6 requested a PPP loan for **$199,616.00**. They were approved on **March 30, 2021** by the SBA for an amount of $199,616.00. The loan was facilitated by A10capital, LLC. Corp 6 received 100% of the approved amount. The SBA forgave $201,448.09 of this loan on March 4, 2022. On its application for this loan, Corp 6 stated that they had 13 employees with an average salary of $73,704.00 per year. This loan hereafter referred to as the "Corp 6 Loan." Plaintiff alleges that Corp 6's 13 employees were

9

COMPLAINT

actually Corp 1 employees that were fraudulently listed on Corp 6's books so that Corp 1 could show less than 300 employees for its second-round PPP application and so that the Defendants could receive additional first-round proceeds for these same Corp 1 employees through Corp 6.

26.    Defendant Farid Pakravan Professional Dental Corporation is a California corporation ("Corp 7") with its principal place of business at 12121 Wilshire Blvd., Suite 1111, Los Angeles, California 90025.

27.    During round 1 of the paycheck protection program, Corp 7 requested a PPP loan for **$182,167.00**. They were approved on **March 23, 2021** by the SBA for an amount of $182,167.00. The loan was facilitated by A10capital, LLC. Corp 7 received 100% of the approved amount. The SBA forgave $183,873.88 of this loan on March 3, 2022. On its application for this loan, Corp 7 stated that they had 8 employees with an average salary of $109,300.00 per year. This loan hereafter referred to as the "Corp 7 Loan." Plaintiff alleges that Corp 7's 8 employees were actually Corp 1 employees that were fraudulently listed on Corp 7's books so that Corp 1 could show less than 300 employees for its second-round PPP application and so that the Defendants could receive additional first-round proceeds for these same Corp 1 employees through Corp 7.

28.    Corp 1, Corp 2, Corp 3, Corp 4, Corp 5, Corp 6 and Corp 7 shall hereinafter be referred to as the Corporate Defendants.

29.    Defendant Soleyman Cohen-Sedgh ("Cohen-Sedgh) is an individual

and (a) the Chief Executive Officer and Chief Financial Officer of Corp 1, (b) a Director of Corp 2, (c) the Chief Executive Officer and Chief Financial Officer of Corp 3, (d) the Chief Executive Officer and Chief Financial Officer of Corp 4, (e) the Chief Executive Officer and Chief Financial Officer of Corp 5, (f) a director of Corp 6 and (g) a director of Corp 7.

30.    Farid Pakravan ("Pakravan") is an individual and (a) the Secretary of Corp 1, (b) the Secretary of Corp 2, (c) the Secretary of Corp 3, (d) the Secretary of Corp 4, (e) the Secretary of Corp 5, (f) the Chief Executive Officer and Chief Financial Officer of Corp 6 and (g) the Chief Executive Officer and Chief Financial Officer of Corp 7.

31.    Farhad Manavi ("Manavi") is an individual and (a) a Director of Corp 1, (b) the Chief Executive Officer and Chief Financial Officer of Corp 2, and (c) a Director of Corp 5.

32.    Cohen-Sedgh, Pakravan and Manavi are hereafter referred to as the Individual Defendants.

33.    Plaintiff is informed and believes that the Individual Defendants are shareholders and owners of the Corporate Defendants.

34.    Plaintiff is informed and believes that the Individual Defendants exercise control over and manage the affairs of the Corporate Defendants.

35.    Plaintiff is informed and believes that the Corporate Defendants are all affiliates and affiliated as these terms are defined in the "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program" dated April 3, 2020.

36.    In total the Corporate Defendants received **$11,353,257.00** as follows:

| Borrower | Loan Amount | Approved Date | Employees | Lender |
|---|---|---|---|---|
| Corp 1 - Round 1 | $7,343,628.00 | 4/27/2020 | 477 | Idaho First Bank |
| Corp 1 - Round 2 | $1,043,518.00 | 2/14/2021 | 131 | A10capital, LLC |
| Corp 2 | $1,995,000.00 | 2/24/2021 | 218 | A10capital, LLC |
| Corp 3 | $267,612.00 | 3/27/2021 | 23 | A10capital, LLC |
| Corp 4 | $148,481.00 | 3/25/2021 | 18 | A10capital, LLC |
| Corp 5 | $173,235.00 | 3/30/2021 | 15 | A10capital, LLC |
| Corp 6 | $199,616.00 | 3/30/2021 | 13 | A10capital, LLC |
| Corp 7 | $182,167.00 | 3/23/2021 | 8 | A10capital, LLC |
| Total | $11,353,257.00 | | | |

37.    City Real Estate Holding, LLC, is a California limited liability company ("Real Estate LLC") with a principal place of business at 9903 Santa Monica Blvd., 921 Beverly Hills, California 90212. This business address is a mailbox rental address.

38.    During round 1 of the paycheck protection program, Real Estate LLC requested a PPP loan for $20,833.00. They were approved on April 8, 2021 by the SBA for an amount of $20,833.00. The loan was facilitated by Harvest Small Business Finance, LLC. Real Estate LLC received 100% of the approved amount. The SBA forgave $20,933.21 of this loan on October 15, 2021. On its application for this loan, Real Estate LLC stated that they had 1 employee with an average salary of $99,994.00 per year.

39.    Manavi is the Chief Executive Officer, manager and member of Real Estate LLC.

40.    Plaintiff is informed and believes that the one employee claimed by Real Estate LLC on its PPP loan application is Manavi.

### III.    The CARES Act and Paycheck Protection Program

41.    On March 27, 2020, the Coronavirus Aid, Relief, and Economic

Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

42.    The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses as a result of the devastating effect of the COVID-19 pandemic.

43.    Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

44.    On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) became law and changed key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans. Case 9:20-cv-81717-DMM Document 52 Entered on FLSD Docket 05/20/2022 Page 2 of 28

COMPLAINT

45.    Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

46.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

47.    Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

48.    After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program

Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan.

For a PPP loan to be approved, the Lender was required to Answer Yes to the

following questions in the Lender's Application - Paycheck Protection Program

Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General

Eligibility to receive a PPP Loan:

| | | ☐ Yes | ☐ No |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | | |

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP

loan application (SBA Form 2483), the PPP borrower's false certification caused

the Lender to submit to the SBA with respect to that PPP Loan, a Lender's

COMPLAINT

Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that

contained the PPP borrower's False Statement.

49.    SBA Form 2483 provides the following certification, among others

"All SBA loan proceeds will be used only for business-related purposes as specified

in the loan application and consistent with the Paycheck Protection Program Rule"

(hereafter the "Use of Proceeds Certification")

50.    SBA Form 2483 additionally provides the following certification,

among others: "Current economic uncertainty makes this loan request necessary to

support the ongoing operations of the Applicant" (hereafter the "Economic

Necessity Certification").

51.    SBA Form 2483 additionally provides the following certification,

among others: "The funds will be used to retain workers and maintain payroll or

make mortgage interest payments, lease payments, and utility payments, as

specified under the Paycheck Protection Program Rule; I understand that if the

funds are knowingly used for unauthorized purposes, the federal government may

hold me legally liable, such as for charges of fraud" (hereafter the "Worker

Retention and Payroll Certification.")

52.    SBA Form 2483 additionally provides the following certification,

among others: "The Applicant was in operation on February 15, 2020 and had

employees for whom it paid salaries and payroll taxes or paid independent

contractors, as reported on Form(s) 1099-MISC" (hereafter the "In Operation Certification").

53.    SBA Form 2483 additionally provides the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program" (hereafter the "No Other Loan Certification").

54.    After the borrower submitted the PPP loan application, that application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

55.    Under the applicable PPP rules and guidance, recipients of PPP loans could apply to have the interest and principal on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness

Certification").

56.    Borrowers who qualified for and received a "First Draw" PPP loan were permitted, to apply for a "Second Draw" PPP loan, provided that the borrower had (a) previously received a First Draw PPP loan and had used the full amount only for authorized uses; (b) had no more than 300 employees (the "300 Employee Rule"); and (c) could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020 (hereafter "Second Draw Certification").

57.    Like the First Draw PPP loans, Second Draw PPP loans could only be used for certain permitted expenses, such as to fund payroll costs and employee benefits, such as health insurance, to pay for, mortgage interest, rent, utilities or worker protection costs related to COVID19.

## IV.    Defendants' Fraudulent Scheme of Shuffling Employees to Shell Entities to Collect Duplicate Payroll Sums – False Statements and Misuse of Proceeds

### a.    Corp 1

58.    Defendants received a PPP loan for all their 477 employees through Corp 1, then shuffled most of them around to shell entities to collect duplicate loans for the same employees and to reduce the number of employees (to below 300) in the original company (Corp 1) such that Corp 1 would qualify for a second loan. Defendants then did not use the loan for payroll, but rather for personal gain.

59.    In their application for the Corp 1 Round 1 Loan, which was approved

18

COMPLAINT

on April 27, 2020, Corp 1 certified that they had 477 employees, with an average salary of $73,898.00 per year and that 100% of the loan proceeds would be used for payroll. The SBA forgave $7,428,331.00 of this loan on June 25, 2021.

60.    Less than one year later, Corp 1 applied for a Round 2 Loan, which was approved on February 14, 2021. In that application Corp 1 certified a business related major drop in the number of employees, only 131 employees, with an average salary of $38,236.00 per year. They also promised that 100% of the loan proceeds would be used for payroll. The SBA forgave $1,055,182.53 of this loan on March 31, 2022.

61.    In other words, even though Corp 1 certified on its application for the Corp 1 Round 1 Loan that it would retain its workers Corp 1 actually terminated (or for some reason shuffled to other entities) 346, or roughly 73.4% of their employees in less than one year. It is evident that the funds were not used to retain workers.

62.    Corp 1's failure to use the loan proceeds of the Corp Round 1 Loan for payroll and employee retention constitutes a violation of the Use of Proceeds Certification and the Worker Retention and Payroll Certification.

63.    Since the Corp 1 Round 1 Loan was forgiven and Corp 1 reduced the average number of it's employees by 73.4%, when Corp 1 made the Loan Forgiveness Certification, that certification was false.

64.    Corp 1 terminated (or otherwise separated) 73.4% of its employees after it received the Corp 1 Round 1 Loan, when Corp 1 made the Second Draw Certification, so that certification was false.

65.    Corp 1 also certified it had less than 300 employees for its Round 2

Loan, but that was also false. That statement was false because prior to submitting the second-round loan application most of Corp 1's employees were fraudulently listed as employees of Corp 2 through Corp 7.

66.    Plaintiff is informed and believes and herein alleges that the proceeds of the Corp 1 Round 1 Loan and the Corp 1 Round 2 Loan were not used for permitted purposes and therefore when Corp 1 made the Use of Proceeds Certification, the Worker Retention and Payroll Certification and the Loan Forgiveness Certification with respect to each of the loans, the certifications were false.

### b. Corp 2

67.    Corp 2 is a shell corporation. It was not in operation and was not active until the PPP presented an opportunity for the Defendants to steal.

68.    Corp 2 was originally formed on November 10, 2010 by filing of Articles of Incorporation with the California Secretary of State. Since July 28, 2011 until May 27, 2020 (right after the Corp 1 Round 1 Loan was approved) Corp 2 lay dormant. There were no filings with the California Secretary of State. For more than nine years, Corp 2 filed nothing with the California Secretary of State. There was also no activity which could be detected in any media or other record. As of the date of this Complaint Corp 2 is delinquent with the filing of its Statement of Information with the California Secretary of State.

69.    Corp 2's first filing after this extended period of dormancy was on May 27, 2020, immediately after Corp 1 had obtained a first-round loan and the 300 Employee Rule was known to the Defendants.

70.    Under the 300 Employee Rule, Corp 1 was ineligible and prohibited from obtaining a second round PPP loan because it had more than 300 employees,

in reality.

71.    Plaintiff is informed and believes that Corp 2 was exploited by the Defendants as a way to evade the 300 Employee Rule enabling it to fraudulently obtain loan proceeds for employees already claimed by Corp 1.

72.    Plaintiff is informed and believes that the 218 employees set forth in Corp 2's PPP application were actually employees of Corp 1, for which Corp 1 had already received PPP loan proceeds. They were then shuffled to Corp 2 for two reasons: 1) to allow Corp 1 to evade the 300 Employee Rule for its second-round loan and; 2) to allow Corp 2 to get another loan for the same employees, to "double-dip" for payroll costs already received by Corp 1 for the same employees in its first round loan.

73.    Plaintiff is informed and believes and herein alleges that the proceeds of the Corp 2 Loan were not used for permitted purposes and therefore when Corp 2 made the Use of Proceeds Certification, the Worker Retention and Payroll Certification and the Loan Forgiveness Certification with respect to each of the loans, the certifications were false.

74.    Plaintiff is informed and believes and herein alleges that Corp 2 was not in operation on February 15, 2020 and did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, and therefore when Corp 2 made the In Operation Certification, that certification was false.

75.    Plaintiff is informed and believes and herein alleges that when the authorized representative of Corp 2 made the No Other Loan Certification, such certification was not made in "good-faith" as required because the object of the certification was to evade the 300 Employee Rule restriction on Corp 1 and to

double-dip, and therefore such certification was false.

### c. Corp 3

76.     Corp 3 is a shell corporation. It was not in operation and was not active until the PPP presented an opportunity for the Defendants to steal.

77.     Corp 3 was originally formed on October 13, 1994 upon the filing of Articles of Incorporation with the California Secretary of State. From 1997 until 2009 the only events with the California Secretary of State were delinquencies and failures of Corp 3 to follow corporate formalities.

78.     Under the 300 Employee Rule, Corp 1 was ineligible and prohibited from obtaining a second round PPP loan because it had more than 300 employees, in reality.

79.     Plaintiff is informed and believes that Corp 3 was exploited by the Defendants as a way to evade the 300 Employee Rule enabling it to fraudulently obtain loan proceeds for employees already claimed by Corp 1.

80.     Plaintiff is informed and believes that the 23 employees set forth in Corp 3's PPP application were actually employees of Corp 1, for which Corp 1 had already received PPP loan proceeds. They were then shuffled to Corp 3 for two reasons: 1) to allow Corp 1 to evade the 300 Employee Rule for its second-round loan and; 2) to allow Corp 3 to "double-dip" for payroll costs already received by Corp 1 for the same employees in its first round loan.

81.     Plaintiff is informed and believes and herein alleges that the proceeds of the Corp 3 Loan were not used for permitted purposes and therefore when Corp 2 made the Use of Proceeds Certification, the Worker Retention and Payroll

Certification and the Loan Forgiveness Certification with respect to each of the loans, the certifications were false.

82.    Plaintiff is informed and believes and herein alleges that Corp 3 was not in operation on February 15, 2020 and did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, and therefore when Corp 3 made the In Operation Certification, that certification was false.

83.    Plaintiff is informed and believes and herein alleges that when the authorized representative of Corp 3 made the No Other Loan Certification, such certification was not made in "good-faith" as required because the object of the certification was to evade the 300 Employee Rule restriction on Corp 1 and to double-dip, and therefore such certification was false.

### d. Corp 4

84.    Corp 4 is a shell corporation. It was not in operation and was not active until the PPP presented an opportunity for the Defendants to steal.

85.    Corp 4 was originally formed on April 2, 2001 upon the filing of Articles of Incorporation with the California Secretary of State. From 2004 until 2019 the only events with the California Secretary of State were delinquencies and failures of Corp 4 to follow corporate formalities.

86.    Following this extended period of failing to comply with corporate formalities on May 4, 2021 Corp 4 filed a Statement of Information. As of the date of this Complaint, Corp 4 is again delinquent with respect to filing its required Statement of Information.

87.    Corp 4's first filing after this extended period of dormancy was on May 4, 2021, after Corp 1 had obtained a first-round loan and the 300 Employee

Rule was known to the Defendants.

88.    Under the 300 Employee Rule, Corp 1 was ineligible and prohibited from obtaining a second round PPP loan because it had more than 300 employees, in reality.

89.    Plaintiff is informed and believes that Corp 4 was exploited by the Defendants as way to evade the 300 Employee Rule and to fraudulently obtain loan proceeds for employees already claimed by Corp 1.

90.    Plaintiff is informed and believes that the 18 employees set forth in Corp 4's PPP application were actually employees of Corp 1, for which Corp 1 had already received PPP loan proceeds. They were then shuffled to Corp 4 for two reasons: 1) to allow Corp 1 to evade the 300 Employee Rule for its second-round loan; and 2) to allow Corp 4 to get another loan for the same employees, to "double-dip" for payroll costs already received by Corp 1 for the same employees in its first round loan.

91.    Plaintiff is informed and believes and herein alleges that the proceeds of the Corp 4 Loan were not used for permitted purposes and therefore when Corp 4 made the Use of Proceeds Certification, the Worker Retention and Payroll Certification and the Loan Forgiveness Certification with respect to each of the loans, the certifications were false.

92.    Plaintiff is informed and believes and herein alleges that Corp 4 was not in operation on February 15, 2020 and did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, and therefore when Corp 4 made the In Operation Certification, that certification was false.

93.    Plaintiff is informed and believes and herein alleges that when the

authorized representative of Corp 4 made the No Other Loan Certification, such certification was not made in "good-faith" as required because the object of the certification was to evade the 300 Employee Rule restriction on Corp 1 and to double-dip, and therefore such certification was false.

### e. Corp 5

94.    Corp 5 is a shell corporation. It was not in operation and was not active until the PPP presented an opportunity for the Defendants to steal.

95.    Corp 5 was originally formed on September 26, 2001 upon the filing of Articles of Incorporation with the California Secretary of State. From 2001 until 2018 the only events with the California Secretary of State were delinquencies and failures of Corp 5 to follow corporate formalities. In 2018 Corp 5 followed a statement of information and then failed to file any other required documents until 2021. Following this extended period of failing to comply with corporate formalities on May 4, 2021, Corp 5 filed a Statement of Information.

96.    Corp 5's first filing after this extended period of dormancy was on May 4, 2021, after Corp 1 had obtained a first-round loan and the 300 Employee Rule was known to the Defendants.

97.    Under the 300 Employee Rule, Corp 1 was ineligible and prohibited from obtaining a second round PPP loan because it had more than 300 employees, in reality.

98.    Plaintiff is informed and believes that Corp 5 was exploited by the Defendants as a way to evade the 300 Employee Rule enabling it to fraudulently obtain loan proceeds for employees already claimed by Corp 1.

99.    Plaintiff is informed and believes that the 18 employees set forth in Corp 5's PPP application were actually employees of Corp 1, for which Corp 1 had

already received PPP loan proceeds. They were then shuffled to Corp 5 for two reasons: 1) to allow Corp 1 to evade the 300 Employee Rule for its second-round loan; and 2) to allow Corp 5 to get another loan for the same employees, to "double-dip" for payroll costs already received by Corp 1 for the same employees in its first round loan.

100.   Plaintiff is informed and believes and herein alleges that the proceeds of the Corp 5 Loan were not used for permitted purposes and therefore when Corp 5 made the Use of Proceeds Certification, the Worker Retention and Payroll Certification and the Loan Forgiveness Certification with respect to each of the loans, the certifications were false.

101.   Plaintiff is informed and believes and herein alleges that Corp 5 was not in operation on February 15, 2020 and did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, and therefore when Corp 5 made the In Operation Certification, that certification was false.

102.   Plaintiff is informed and believes and herein alleges that when the authorized representative of Corp 5 made the No Other Loan Certification, such certification was not made in "good-faith" as required because the object of the certification was to evade the 300 Employee Rule restriction on Corp 1 and to double-dip, and therefore such certification was false.

### f.  Corp 6

103.   Corp 6 is a shell corporation. It was not in operation and was not active until the PPP presented an opportunity for the Defendants to steal.

104.   Corp 6 was originally formed on August 19, 2002 upon the filing of Articles of Incorporation with the California Secretary of State. From 2002 until

2018 the only events with the California Secretary of State were delinquencies and failures of Corp 6 to follow corporate formalities. In 2018 Corp 6 filed a statement of information and then failed to file any other required documents until 2021. Following this extended period of failing to comply with corporate formalities on May 4, 2021, Corp 6 filed a Statement of Information.

105.    Corp 6's first filing after this extended period of dormancy was on May 4, 2021, after Corp 1 had obtained a first-round loan and the 300 Employee Rule was known to the Defendants.

106.    Under the 300 Employee Rule, Corp 1 was ineligible and prohibited from obtaining a second round PPP loan because it had more than 300 employees, in reality.

107.    Plaintiff is informed and believes that Corp 6 was exploited by the Defendants as a way to evade the 300 Employee Rule enabling it to fraudulently obtain loan proceeds for employees already claimed by Corp 1.

108.    Plaintiff is informed and believes that the 13 employees set forth in Corp 6's PPP application were actually employees of Corp 1, for which Corp 1 had already received PPP loan proceeds. They were then shuffled to Corp 6 for two reasons: 1) to allow Corp 1 to evade the 300 Employee Rule for its second-round loan; and 2) to allow Corp 6 to get another loan for the same employees, to "double-dip" for proceeds already received by Corp 1 for the same employees in its first-round loan.

109.    Plaintiff is informed and believes and herein alleges that the proceeds of the Corp 6 Loan were not used for permitted purposes and therefore when Corp 6 made the Use of Proceeds Certification, the Worker Retention and Payroll Certification and the Loan Forgiveness Certification with respect to each of the

loans, the certifications were false.

110.    Plaintiff is informed and believes and herein alleges that Corp 6 was not in operation on February 15, 2020 and did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, and therefore when Corp 6 made the In Operation Certification, that certification was false.

111.    Plaintiff is informed and believes and herein alleges that when the authorized representative of Corp 6 made the No Other Loan Certification, such certification was not made in "good-faith" as required because the object of the certification was to evade the 300 Employee Rule restriction on Corp 1 and to double-dip, and therefore such certification was false.

### g.  Corp 7

112.    Corp 7 is a shell corporation. It was not in operation and was not active until the PPP presented an opportunity for the Defendants to steal.

113.    Corp 7 was originally formed on July 24, 2002 upon the filing of Articles of Incorporation with the California Secretary of State. From 2002 until 2008 the only events with the California Secretary of State were delinquencies and failures of Corp 7 to follow corporate formalities, including its suspension in 2005 and revivor in 2008. From its revivor in 2008 to the filing of a statement of information 2018, none of the other many required filings were made with the Secretary of State. In 2018 Corp 7 filed a statement of information and then failed to file any other required documents until 2021. Following this extended period of failing to comply with corporate formalities on March 1, 2021, Corp 7 filed a Statement of Information.

114.    Corp 7's first filing after this extended period of dormancy was on

March 1, 2021, after Corp 1 had obtained a first-round loan and the 300 Employee Rule was known to the Defendants.

115.    Under the 300 Employee Rule, Corp 1 was ineligible and prohibited from obtaining a second round PPP loan because it had more than 300 employees, in reality.

116.    Plaintiff is informed and believes that Corp 7 was exploited by the Defendants as a way to evade the 300 Employee Rule enabling it to fraudulently obtain loan proceeds for employees already claimed by Corp 1.

117.    Plaintiff is informed and believes that the 8 employees set forth in Corp 7's PPP application were actually employees of Corp 1, for which Corp 1 had already received PPP loan proceeds. They were then shuffled to Corp 7 for two reasons: 1) to allow Corp 1 to evade the 300 Employee Rule for its second-round loan; and 2) to allow Corp 7 to get another loan for the same employees, to "double-dip" for payroll costs already received by Corp 1 for the same employees in its first-round loan.

118.    Plaintiff is informed and believes and herein alleges that the proceeds of the Corp 7 Loan were not used for permitted purposes and therefore when Corp 7 made the Use of Proceeds Certification, the Worker Retention and Payroll Certification and the Loan Forgiveness Certification with respect to each of the loans, the certifications were false.

119.    Plaintiff is informed and believes and herein alleges that Corp 7 was not in operation on February 15, 2020 and did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, and therefore when Corp 6 made the In Operation Certification, that certification was false.

120.   Plaintiff is informed and believes and herein alleges that when the authorized representative of Corp 7 made the No Other Loan Certification, such certification was not made in "good-faith" as required because the object of the certification was to evade the 300 Employee Rule restriction on Corp 1 and to double-dip, and therefore such certification was false.

**h. The Defendants' Embezzlement of the Loan Funds - Pandemic Real Estate Buying Spree**

121.   Real Estate LLC is an entity that is owned and controlled by Manavi.

122.   On July 2, 2020, through Real Estate LLC, Manavi purchased that certain real property located at 1131 N Westmoreland Ave., Los Angeles California 90029 in an all-cash offer for $900,000.

123.   On August 24, 2020, Manavi purchased the property located at 2187 Summitridge Drive, Beverly Hills, California 90210 for $4,375,000.

124.   On March 26, 2021, through Real Estate LLC, Manavi purchased that certain property located at 216 N Park View St, Los Angeles, California 90026 in an all-cash offer for $847,000. Manavi then transferred the property to 216 N Park View LLC, a California limited liability company, owned and managed by his brother Farshad Manavi.

125.   On June 7, 2021, Pakravan purchased the property located at 24314 Malibu Rd., Malibu, California 90265 for $9,700,000. Pakravan thereafter quitclaimed the property to Fun and Malibu Road LLC, a California limited liability company in which he and Cohen-Sedgh are both members.

126.   On June 29, 2021, through Real Estate LLC, Manavi purchased that certain property located at 7951 Capistrano Avenue, Canoga Park, California 91304 in an all-cash offer for $640,000.

127.   On August 9, 2021, the Individual Defendants, through Washington and Norwalk LLC, purchased that property located at 7910 Norwalk Blvd., Whittier, California 90606. Washington and Norwalk, LLC is a California limited liability company that is owned and controlled by the Individual Defendants.

128.   On August 30, 2021, through Real Estate LLC, Manavi purchased that certain property located at 1546 W Avenue L12, Lancaster, California 93534 in an all-cash offer for $373,000.

129.   On November 4, 2021, through Real Estate LLC, Manavi purchased that certain property located at 17159 Lassen St., Northridge, California 91325 in an all-cash offer for $652,500.

## V.    THE FALSE CLAIMS ACT

130.   Plaintiff alleges that, from at least April 27, 2020 through the time of the filing of this Complaint, Defendants violated the FCA by "knowingly" submitting and/or causing the submission of false claims for payment to lenders authorized by the SBA to process PPP loan applications in the form of PPP Applications and the resulting receipt and failure to return PPP loans. These claims for payment were false because Defendants: (1) made knowingly false statements and certifications in their PPP applications, and in certifications accompanying its receipt of federal PPP funds, that it was complying with, and would continue to comply with, applicable laws and regulations governing the award of PPP loans; and/or (2) made, or caused to be made, false representations in loan applications that the Corporate Defendants were eligible to receive such PPP loans. Moreover, Defendants' false claims caused on numerous occasions Idaho First Bank and A10Capital, LLC to submit to the SBA, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained Defendants'

false statement concerning Corporate Defendants' general eligibility for the PPP loans, on which the SBA relied and paid to the lenders.

131.    The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government.

See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

(1) . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government . . .

31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

42. The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

32

COMPLAINT

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

132.    A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/pdf/2022-09928.pdf.

## VI.    JURISDICTION & VENUE

133.    This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

134.    This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are found in the Central District of California, and acts proscribed by

31 U.S.C. § 3729 occurred in this district.

135.   Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Corporate Defendants are all California entities headquartered at the same office in Los Angeles County, all within the Central District of California. Moreover, the Individual Defendants reside and do business in Los Angeles County within the Central District of California. Furthermore, acts that form the basis of this Complaint occurred in the Central District of California.

136.   Relator's claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

## VII.   FIRST CAUSE OF ACTION

### FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729.(a)(1)(A-B))

137.   Plaintiff alleges and incorporates by reference each and every

allegation contained in all prior paragraphs of this complaint.

138. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

139. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A).

140. By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

141. Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal

to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 1, 2022                THE LAW OFFICE OF HAKIMI & SHAHRIARI

By:    /s/ Anoush Hakimi
       ANOUSH HAKIMI, ESQ.
       Attorney for Plaintiff RELATOR LLC

COMPLAINT